FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2023 DEC 12 PM 4: 13

OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JACKIE HARPER,<br><br>Defendant. | 8:22CR125<br><br>PLEA AGREEMENT |

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Susan T. Lehr, Acting United States Attorney, and John E. Higgins, Assistant United States Attorney, and defendant, Jackie Harper, and Brent M. Bloom, counsel for defendant, as follows:

I

## THE PLEA

A. CHARGE(S) & FORFEITURE ALLEGATION(S).

Defendant agrees to plead guilty to Count I of an Information. Count I charges a violation of Title 15, United States Code, Section 645(a). Defendant further waives any right, title, or interest in $87,613.63 seized from account number xxxx3919 at Access Bank, and in the sums of $1,800 cash and $2,581 cash seized from Defendant's residence, and agrees the funds may be applied to any restitution ordered by the Court in this case.

B. In exchange for the defendant's plea of guilty as indicated above, the United States agrees as follows:

1. At the time of sentencing, the United States will move to dismiss as to this defendant the original Indictment and the Superseding Indictment.

2. The United States agrees that the defendant will not be federally prosecuted in the District of Nebraska for offenses related to government program fraud or money laundering offenses as disclosed by the discovery material delivered to the defendant's attorney as of the date this agreement is signed by all parties, other than as set forth in paragraph A, above. This agreement not to prosecute the defendant for specific crimes does not prevent any prosecuting

1

authority from prosecuting the defendant for any tax offense or any other crime, or for any crime involving physical injury or death.

## II
## NATURE OF THE OFFENSE

A.    ELEMENTS EXPLAINED.

Defendant understands that the offense to which defendant is pleading guilty has the following elements:

Count I

1. Defendant made a statement knowing it to be false;
2. for the purpose of obtaining for himself or for any applicant any loan, or for the purpose of influencing in any way the action of the Small Business Administration, or for the purpose of obtaining money, property, or anything of value, under Title 15, United States Code, Chapter 14A (Aid to Small Business).

B.    ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed.

Starting in 2020, the Small Business Administration (SBA) guaranteed Paycheck Protection Program (PPP) loans made by participating lenders to small businesses. PPP loans were authorized by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which provided that a PPP loan is a loan under the Small Business Act for purposes of 15 U.S.C. § 645. See 15 U.S.C. § 9008(i).

To obtain a loan, the representative of the applicant business had to certify that the business was in operation as of February 15, 2020, that it had a certain number of employees as of the date of the application, that it had a specified average monthly payroll, and that it would use the funds for payroll and other specified business purposes. The amount of the PPP loan depended on the business's average monthly payroll. A business was eligible for a loan equal to 2 ½ times its monthly payroll. The greater the business's average monthly payroll, therefore, the larger the loan the business could obtain, subject to a cap. Financial institutions and other private lenders received and processed applications, forwarded information to the SBA so the funds could be earmarked, and funded the PPP loans with their own money.

Individuals could also apply for loans under the Economic Injury Disaster Loan ("EIDL") program. EIDL proceeds could be used only for working capital to pay expenditures necessary to alleviate the specific economic injury the small business suffered due to COVID-19. EIDL funds were issued directly from the United States Treasury, and an applicant applied through the SBA via an online portal. Applicants for EIDL loans certified information concerning the business and the business owner, including the business's gross revenue and cost of goods sold for the 12-month period preceding the disaster, which, for COVID-19, was defined as January 31, 2020. In 2020, a business was eligible for a loan equal to ½ of gross profit. Starting in April 2021, a business was eligible for a loan equal to twice gross profit. Overstating a business's purported gross revenue or understating its cost of goods sold, therefore, increased the dollar amount of a loan the business could obtain, subject to a cap.

During 2020 and 2021, with the assistance of co-defendant Ramel Thompson (RT), Defendant submitted or caused to be submitted applications to obtain PPP and EIDL loans on behalf of a business called J Harper Holdings LLC d/b/a Sprague Street Auto ("Sprague Street Auto"). The applications contained material misrepresentations concerning how much Sprague Street Auto had paid employees in past compensation and how much gross revenue Sprague Street Auto had received in the past, resulting in significantly inflated loans to Sprague Street Auto under the PPP and EIDL programs.

In an application submitted in July 2020 for an EIDL loan, Defendant represented or caused to be represented that Sprague Street Auto had gross revenues of $175,210 and cost of goods sold of $0 during the twelve months prior to January 31, 2020. In fact, Sprague Street Auto received substantially less in gross revenue during that period. In a Schedule C filed in connection with Defendant's 2019 tax return, Defendant reported his business received gross receipts of $44,132 and had total expenses of $48,425 that year.

In a PPP application submitted in April 2020, Defendant represented or caused to be represented that Sprague Street Auto had eight employees and average payroll of $23,040 per month during the twelve months preceding January 31, 2020, which would total approximately $276,480. In fact, Sprague Street Auto paid others significantly less in compensation per month during 2019. The total activity in bank account(s) associated with Defendant reflected deposits to and withdrawals from the account(s) totaling approximately $128,000 during all of 2019.

False documents created by RT were also submitted in support of PPP applications for Sprague Street Auto, including:

- IRS Form Schedule C (Profit or Loss from Business) claiming that Sprague Street Auto had gross receipts of $330,638 in 2019.
- IRS Form 941's for 2019 Defendant had signed stating that Sprague Street Auto paid wages of $69,120 per quarter during 2019. The Form 941's were not filed with the IRS.

After accounting for duplicate applications, Defendant submitted or caused to be submitted applications in 2020 and 2021 that contained material misrepresentations and that attempted to obtain approximately $145,300 in PPP and EIDL loans and grants. Defendant obtained approximately $145,300.

## III

## PENALTIES

A. Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

COUNT I.

1. A maximum two years in prison;
2. A maximum $250,000 fine;
3. A mandatory special assessment of $100 per count; and
4. A term of supervised release of not more than 1 year. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.
5. Possible ineligibility for certain Federal benefits.

## IV

## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE
## DISTRICT OF NEBRASKA

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

# V
# SENTENCING ISSUES

A.  SENTENCING AGREEMENTS.

Although the parties understand that the Guidelines are advisory and only one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures (if applicable). Unless otherwise stated, all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. The parties agree that Defendant's Relevant Conduct under USSG § 1B1.3 includes all the PPP loan application(s) and/or EIDL loan and grant application(s) under Defendant's name within the time alleged in Count I of the Superseding Indictment.

2. The parties agree that Defendant's Base Offense Level is six, pursuant to USSG § 2B1.1(a)(2).

3. The parties agree that, for purposes of determining the loss enhancement under USSG § 2B1.1(b)(1), the "actual loss" and the "intended loss" as to the Defendant are the same, $145,300.00.

4. The parties have no agreement whether Defendant should receive an adjustment for his role in the offense, pursuant to USSG § 3B1.2. The position of the United States is that Defendant should not receive an upward or downward adjustment based on role. The position of Defendant is that he should receive a downward adjustment based on role. The parties agree this issue will be resolved by the Court at sentencing.

5. If the defendant is found to be entitled to an offense level reduction under U.S.S.G. 3E1.1(a) for acceptance of responsibility, the United States hereby moves that the court reduce the defendant's offense level by one additional level, pursuant to U.S.S.G. § 3E1.1(b), if that paragraph otherwise applies.

6. The parties agree that Defendant may request, and the United States will not oppose, a two-level reduction to Defendant's offense level pursuant to USSG § 4C1.1, if Defendant otherwise qualifies.

7. Defendant agrees to the following regarding Restitution:
    a. The amount of restitution ordered by the Court shall include all relevant conduct,

including, but not limited to, all charged and uncharged criminal conduct alleged in the Superseding Indictment, and not limited to the count(s) of conviction in this case, in an amount to be determined by the Small Business Administration. The parties anticipate that restitution will be in the amount of at least $145,300.00. The parties agree that an offense listed under 18 U.S.C. § 3663A(c)(1) gave rise to this plea agreement, and that restitution is therefore mandatory pursuant to 18 U.S.C. § 3663A(c)(2). The parties further agree that any loan repayments made at or before the time of sentencing for PPP loans made to Sprague Street Auto (Loan Numbers 2546447401 and 6027498506) and for an EIDL loan to J Harper Holdings LLC (Loan Number 9946298009) will be credited to restitution. Further, as noted above, the parties agree that $87,613.63 seized from account number xxxx3919 at Access Bank and the sums of $1,800 cash and $2,581 cash seized from Defendant's residence may be applied to any restitution ordered by the Court in this case.

b. Defendant also shall pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case.

c. Restitution and Assessment payments shall be made payable to the "U.S. District Court Clerk."

d. Court imposed monetary penalties are due immediately and subject to immediate enforcement by the United States. 18 U.S.C. § 3613.

e. Any Court ordered schedule for restitution payments is merely a minimum payment obligation and does not limit the methods by which the United States may immediately enforce the judgment in full, including but not limited to enrollment in the Treasury Offset Program (TOP) (*see* 26 U.S.C. § 6402(d); 31 U.S.C. §3720A; 31 U.S.C. § 3716) and garnishment of available funds, wages, or assets (*see* 18 U.S.C. §§3613, 3664(m)).

f. If incarcerated, Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a payment schedule.

g. Defendant will provide all of defendant's financial information to the United States and the Probation Officer, and agrees, if requested, to participate in a pre-sentencing debtor exam. Defendant will fully and truthfully disclose all assets and property in which Defendant has any interest, or over which Defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party.

h. At the request of the U.S. Attorney's Office (USAO), Financial Litigation Program (FLP), Defendant will promptly execute and return a fully completed and executed Financial Disclosure statement under oath, a Tax Information Authorization Form 8821, and a Request for Transcript of Tax Return Form 4506-T. Defendant also agrees to provide the USAO FLP copies of financial information that Defendant submitted to the U.S. Probation Office.

i. Defendant authorizes the USAO FLP to obtain Credit Reports concerning Defendant to enable the USAO to evaluate Defendant's ability to satisfy any financial obligations and monetary penalties imposed as part of the sentence and will execute any Release for such information upon request.

j. Defendant understands that compliance with USAO requests for financial information will be taken into account when the United States makes a recommendation to the Court regarding Defendant's acceptance of responsibility at sentencing. Defendant's failure to timely and accurately complete and sign the financial statement and any update thereto, may, in addition to any other penalty or remedy, indicate a failure to accept responsibility.

k. Defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until Defendant has satisfied restitution in full.

l. Defendant certifies that Defendant has not transferred assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Defendant promises that Defendant will make no such transfers in the future.

m. If the United States learns of any misrepresentation in the financial disclosure

statement, or of any asset in which Defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of Defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, enforce the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, including enforcement of 100 percent of the value of any previously undisclosed asset. Defendant agrees not to contest enforcement against of such asset or property. If the United States opts to be relieved of its obligations under this plea agreement, Defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

B.  ACCEPTANCE OF RESPONSIBILITY.

Notwithstanding paragraph A above, the United States will <u>not</u> recommend any adjustment for Acceptance of Responsibility if defendant:

1. Fails to admit a complete factual basis for the guilty plea at the time it is entered, or
2. Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the court or probation officer, or
3. Fails to appear in court, or
4. Engages in additional criminal conduct, or
5. Attempts to withdraw the guilty plea, or
6. Refuses to abide by any lawful court order, or
7. Contests or assists any third party in contesting the forfeiture of property(ies)seized or forfeited in connection with this case.

The parties further agree the defendant will make no "blanket" objections to the criminal history calculation (specific objections based on stated grounds are permitted). Objections to criminal history on the basis that the defendant was not the person who was convicted of the offense(s) described in the presentence investigation report or on the basis that the defendant was not represented by counsel in connection with such conviction(s), if determined to be unfounded, are evidence the defendant has not accepted responsibility and the parties agree no credit for acceptance of responsibility should be given.

C.  ADJUSTMENTS, DEPARTURES & REDUCTIONS UNDER 18 U.S.C. § 3553.

The parties agree that defendant may request or recommend additional downward adjustments, departures, including criminal history departures under U.S.S.G. § 4A1.3, and sentence reductions under 18 U.S.C. § 3553(a), and that the United States will oppose any such downward adjustments, departures, and sentence reductions not set forth in Section V, paragraph A above.

D.    <u>CRIMINAL HISTORY</u>.

The parties have no agreement concerning the defendant's Criminal History Category, except that if defendant is determined to be a Career Offender, the parties agree that the defendant is automatically a Criminal History Category VI pursuant to U.S.S.G. § 4B1.1(b).

E.    <u>"FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION</u>.

The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report, and may be disclosed to the court for purposes of sentencing.

## VI

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed, except:

(a) As provided in Section I above, (if this is a conditional guilty plea); and

(b) A claim of ineffective assistance of counsel.

(c) A right to file a motion under Section 3582(c)(1)(A);

    1. the general right to file a compassionate release motion;

    2. the right to file a second or successive such motion; or

    3. the right to appeal the denial of a compassionate release.

The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

(a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

(b) The right to seek post-conviction relief based on ineffective assistance of counsel.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VII
## BREACH OF AGREEMENT

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## VIII
## SCOPE OF AGREEMENT

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B. By signing this agreement, the defendant agrees that the time between the date the defendant signs the agreement and the date of the guilty plea will be excluded under the Speedy

Trial Act. The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

   C. The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

   D. Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. The defendant will make this payment at or before the time of sentencing.

   E. By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

   F. This agreement may be withdrawn by the United States at any time prior to its being signed by all parties. Further, this proposed plea agreement is automatically withdrawn if the properly executed original agreement is not received on or before December 6, 2023, at the United States Attorney's Office, District of Nebraska.

## IX

### MODIFICATION OF AGREEMENT MUST BE IN WRITING

   No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

## X
## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, defendant certifies that defendant read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

UNITED STATES OF AMERICA
SUSAN T. LEHR
Acting United States Attorney

12/12/23
Date

John E. Higgins
ASSISTANT U.S. ATTORNEY

12/4/2023
Date

Jackie Harper
DEFENDANT

12/4/2023
Date

Brent M. Bloom
COUNSEL FOR DEFENDANT

12